[Cite as *State v. McShaffrey*, 2018-Ohio-1813.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO

    Appellee

    v.

EDWARD M. MCSHAFFREY

    Appellant

C.A. No.    28539

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2016-01-0301

DECISION AND JOURNAL ENTRY

Dated: May 9, 2018

TEODOSIO, Judge.

**{¶1}** Appellant, Edward M. McShaffrey, appeals from his conviction for gross sexual imposition in the Summit County Court of Common Pleas. This Court affirms.

I.

**{¶2}** In January of 2016, a 69-year-old woman suffering from Parkinson's disease and dementia ("H.W.") was residing on the assisted living floor of a senior facility in Akron that specialized in caring for those individuals suffering from Alzheimer's disease and dementia. Mr. McShaffrey was employed as a nurse at the facility at that time and worked on the assisted living floor. According to another nurse at the facility ("Niki"), H.W. required assistance with "pretty much everything[,]" including eating, bathing, and walking down the hall. H.W. had difficulties communicating verbally and could only occasionally speak one or two nonsensical words.

**{¶3}** At approximately 3:30 A.M. one morning, Niki was looking for a co-worker on the assisted living floor to discuss an issue not relevant to this case. She saw a supply cart

parked outside of H.W.'s room and thought that the co-worker might be in the room. According to Niki, she entered the room and, upon reaching the back bedroom, saw Mr. McShaffrey kneeling on one knee while facing H.W., who was standing. H.W.'s shirt was pulled up to her neck and Mr. McShaffrey had his mouth pressed up against her left breast, covering her left nipple. H.W. was only wearing her shirt and underwear. Once Mr. McShaffrey noticed Niki's presence, he attempted to pull H.W.'s shirt back down. Niki immediately left the room and Mr. McShaffrey followed. She immediately called the facility's health and wellness director ("Nicholette") to report the incident. Nicholette testified that she came to the facility and had the security officer ("Bob") escort Mr. McShaffrey off of the premises. She then asked Bob to call the police. H.W. was transferred to a hospital and a sexual assault examination kit was completed. The Ohio Bureau of Criminal Identification and Investigation ("BCI") determined that DNA swabs taken from H.W.'s breasts contained a major DNA profile consistent with Mr. McShaffrey.

{¶4} After a jury trial, Mr. McShaffrey was found guilty of gross sexual imposition, a felony of the fourth degree. The trial court ordered a presentence investigation report ("PSI") to be prepared by the probation department. The trial court sentenced Mr. McShaffrey to 18 months in prison and classified him as a Tier I sex offender.

{¶5} Mr. McShaffrey now appeals from his conviction and raises three assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT'S CRIM.R. 29 MOTION TO DISMISS BECAUSE THERE WAS INSUFFICIENT EVIDENCE PRESENTED TO THE JURY TO FIND HIM GUILTY OF GROSS

SEXUAL IMPOSITION PER THE REQUIREMENTS SET FORTH BY R.C. 2907.05(A)(5).

{¶6} In his first assignment of error, Mr. McShaffrey argues that the trial court erred in denying his Crim.R. 29 motion because there was insufficient evidence to convict him of gross sexual imposition, specifically a lack of evidence demonstrating any sexual contact for the purpose of sexual arousal or gratification, as required under R.C. 2907.05(A)(5). We disagree.

{¶7} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. "A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo." *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, ¶ 6, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶8} Mr. McShaffrey was convicted of gross sexual imposition under R.C. 2907.05(A)(5), which states in relevant part:

> No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he ability of the other person to resist or consent * * * is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the

ability to resist or consent of the other person * * * is substantially impaired because of a mental or physical condition or because of advanced age.

"'Sexual contact' means any touching of an erogenous zone of another, including * * *, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). "A person acts purposely when it is the person's specific intention to cause a certain result * * *." R.C. 2901.22(A).

**{¶9}** As Mr. McShaffrey has limited his sufficiency argument to only challenging whether the State presented sufficient evidence of (1) sexual contact and (2) purpose to sexually arouse or gratify, we will likewise limit our analysis accordingly.

**{¶10}** In the case sub judice, the State presented evidence that Mr. McShaffrey made sexual contact with H.W. for the purpose of sexual arousal or gratification. Niki testified that she entered H.W.'s room and saw Mr. McShaffrey "kneeling on one knee with his mouth pressed up against [H.W.'s] left breast." H.W. was only wearing her shirt and underwear. The incident occurred in the privacy of H.W.'s bedroom around 3:30 A.M. Niki further testified that when Mr. McShaffrey noticed her presence, he immediately attempted to pull down H.W.'s shirt and then followed Niki out of the room. Dr. Jennifer Savitski, the program director of the OB/GYN residency at Akron General Medical Center, testified that she was present when Nurse Kristen Huntley collected DNA swabs from H.W.'s breasts for inclusion in the sexual assault examination kit, which was turned over to police. Mr. Samuel Troyer, a forensic DNA analyst at BCI, testified that the swabs contained in the kit yielded a major DNA profile consistent with Mr. McShaffrey.

**{¶11}** This Court has consistently held that a trier of fact may infer a purpose of sexual arousal or gratification from the type, nature, and circumstances of the contact, along with the personality of the defendant. *E.g., State v. Pistawka*, 9th Dist. Summit No. 27828, 2016-Ohio-

1523, ¶ 16. Upon review of the evidence, we conclude that a rational trier of fact could reasonably infer from Mr. McShaffrey's placement of his mouth on H.W.'s left breast in her bedroom in the middle of the night was done for the purpose of sexual arousal or gratification. As the contact was made with a female's breast, and a purpose of sexual arousal or gratification could reasonably be inferred, the touching of Mr. McShaffrey's mouth to H.W.'s breast plainly falls within the definition of "sexual contact" under R.C. 2907.01(B).

{¶12} After viewing the evidence in a light most favorable to the prosecution, we conclude that the State presented sufficient evidence, if believed, that Mr. McShaffrey had sexual contact with H.W. for the purpose of sexual arousal or gratification, and any rational trier of fact could have found this particular element of gross sexual imposition to be proven beyond a reasonable doubt. Therefore, the trial court did not err in denying his Crim.R. 29 motion for acquittal.

{¶13} Mr. McShaffrey's first assignment of error is overruled.

### ASSIGNMENT OF ERROR TWO

THE JURY LOST ITS WAY IN FINDING THE APPELLANT GUILTY OF GROSS SEXUAL IMPOSITION PER R.C. 2709.05(A)(5) (SIC) BECAUSE THE CONVICTION OF THIS OFFENSE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} In his second assignment of error, Mr. McShaffrey argues that his conviction is against the manifest weight of the evidence. We disagree.

{¶15} This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶16} Mr. McShaffrey argues that the jury lost its way and created a manifest miscarriage of justice because his explanation of the incident was "totally plausible and believable" and it reasonably explained what Niki mistakenly believed she saw that night. He challenges Niki's account of the incident as "questionable" because it was dark in the bedroom with the bathroom light being the only light that was on at the time. On the contrary, Mr. McShaffrey submits that his account of the incident was credible, as he is a veteran of the armed forces and has worked as a nurse for years without ever being accused of any inappropriate conduct.

{¶17} Mr. McShaffrey testified at trial that he checked on H.W. around 3:30 A.M. that night and discovered that she had soiled her pull-up. Her shirt was also soiled as it had been tucked down into her pull-up. Mr. McShaffrey testified that he helped H.W. to the bathroom and removed the soiled items. While in the bathroom with H.W., Mr. McShaffrey testified that he sneezed, but did not cover his mouth because he was wearing soiled gloves. He finished cleaning her up and helped her back to bed. Once inside the bedroom, he testified that it was H.W. who began "pushing her shirt up, pushing down on her clean pull-ups I have put on." He testified that "[a]t approximately that time the other nurse, [Niki], enter[ed] the room." Mr.

McShaffrey testified that he spoke briefly to Niki about H.W. and she soon left. He put H.W. to bed and continued with the rest of his rounds.

{¶18} Detective Michael Yovanno of the Copley Police Department testified that he interviewed Mr. McShaffrey three days after the incident. He testified that over the course of that interview, Mr. McShaffrey never gave an explanation for having any type of contact with H.W.'s breasts, never mentioned seeing H.W.'s breasts, never mentioned H.W. not having a shirt on at some point that evening, and never mentioned anything about soiled clothing. Mr. McShaffrey's only explanation to the detective was that he could have "inadvertently brushed up that area" while trying to stabilize H.W. or while escorting her from the bathroom to the bedroom. The detective testified that once he informed Mr. McShaffrey that DNA testing for bodily fluids was different than DNA testing for touches, Mr. McShaffrey's explanations changed:

> He said he may - - he could have possibly sneezed on her. I asked him specifically if he did sneeze, and he said he can't say if he did or couldn't say if he didn't. He was concerned about perspiration, although he previously admitted having gloves on, and he was unsure how the DNA testing procedure worked.

{¶19} Upon review of the record, we cannot conclude that the jury lost its way or created a manifest miscarriage of justice when it found Mr. McShaffrey guilty of gross sexual imposition. Mr. McShaffrey's story to police that he could have inadvertently brushed up against H.W. changed once he was informed of the possibility of DNA testing for bodily fluids instead of merely DNA testing for touches. He then told police he could have possibly sneezed on H.W., but could not remember if he did or did not sneeze. His story changed again at trial when he was asked on cross-examination if he had sneezed and he concisely replied, "Yes." "The jury had the opportunity to view the witnesses' testimony and adjudge their credibility; therefore, we must give deference to the jurors' judgments." *State v. Clayton*, 9th Dist. Summit

No. 26910, 2014-Ohio-2165, ¶ 25. "This Court will not overturn a conviction because the jury chose to believe the testimony offered by the prosecution." *State v. Tobey*, 9th Dist. Medina No. 05CA0103-M, 2006-Ohio-5069, ¶ 27. This is also not an exceptional case where the evidence presented weighs heavily in favor of Mr. McShaffrey and against conviction. We therefore conclude that Mr. McShaffrey's conviction was not against the manifest weight of the evidence.

{¶20} Accordingly, Mr. McShaffrey's second assignment of error is overruled.

### ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO THE MAXIMUM SENTENCE BECAUSE MR. MCSHAFFREY HAD NO CRIMINAL RECORD, HAD NEVER BEEN TO PRISON AND WAS CONVICTED OF A FOURTH DEGREE FELONY - GROSS SEXUAL IMPOSITION PER R.C. 2907.05(A)(5).

{¶21} In his third assignment of error, Mr. McShaffrey argues that the trial court erred in sentencing him to eighteen months in prison, which is the maximum allowable sentence for felony-four gross sexual imposition under the law. As the record on appeal is incomplete, we must presume regularity and overrule this assignment of error.

{¶22} "Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus. "An appellate court's standard for review of a felony sentence is not whether the sentencing court abused its discretion." *State v. Stevens*, 9th Dist. Medina Nos. 16CA0033-M & 16CA0034-M, 2017-Ohio-5482, ¶ 10, citing R.C. 2953.08(G)(2). "The Supreme Court of Ohio has held that 'an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise

contrary to law.'" *Stevens* at ¶ 10, quoting *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1; R.C. 2953.08(G)(2). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

**{¶23}** Mr. McShaffrey does not argue that his prison sentence falls outside of the appropriate sentencing range or is contrary to law. *See* R.C. 2929.14(A)(4). Instead, he argues that the trial court erred in sentencing him because he was 59-years-old at the time, had no criminal history, had never been incarcerated, and it was "totally plausible" that Niki misunderstood what she believed she saw that night.

**{¶24}** Upon review of the record, we note that the PSI has not been made part of the record on appeal. Throughout Mr. McShaffrey's sentencing hearing, the trial court referred to the PSI several times, specifically stating its concern with some of the information contained within the document. The court was concerned that the PSI stated Mr. McShaffrey had resigned from a previous job at a different retirement community, which was said to be a mutual decision between him and his employer. The court noted that the probation department investigated the matter and indicated in the PSI that Mr. McShaffrey had received complaints from residents and staff about his unprofessional behavior and work habits.

**{¶25}** "It is the appellant's responsibility to ensure that the record on appeal contains all matters necessary to allow this Court to resolve the issues on appeal." *State v. Farnsworth*, 9th Dist. Medina No. 15CA0038-M, 2016-Ohio-7919, ¶ 16. "This Court has consistently held that, where the appellant has failed to provide a complete record to facilitate appellate review, we are compelled to presume regularity in the proceedings below and affirm the trial court's judgment." *Id.* Without the PSI in the record before us, we cannot properly review Mr. McShaffrey's

sentence. *See State v. Carmel*, 9th Dist. Summit No. 28463, 2017-Ohio-7589, ¶ 9, citing *State v. Burden*, 9th Dist. Summit No. 28367, 2017-Ohio-4420, ¶ 7. Accordingly, we must presume regularity in the proceedings below and affirm. *See Carmel* at ¶ 9.

**{¶26}** Mr. McShaffrey's third assignment of error is overruled.

III.

**{¶27}** Mr. McShaffrey's first, second, and third assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P.J.
HENSAL, J.
CONCUR

APPEARANCES:

MICHAEL T. CALLAHAN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.